FILED
17 APR 11 PM 3:46
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY __MXN__ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN TARR,<br><br>                Petitioner,<br>v.<br><br>ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA,<br><br>                Respondent. | Case No.: 16cv93-DMS(KSC)<br><br>**REPORT AND RECOMMENDATION RE PETITION FOR WRIT OF HABEAS CORPUS** |

    Petitioner Bryan Tarr, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") challenging his judgment of conviction in San Diego Superior Court Case No. EDD7332 for contempt as a result of his failure to make complete spousal support payments. [Doc. No. 1, at p. 1.] Petitioner was found in contempt and incarcerated for about 65 days beginning on January 15, 2015. [Doc. No. 1, at p. 1.]

    The Petition alleges that: (1) petitioner was denied his Due Process right to counsel at his contempt hearing, because his appointed counsel was dismissed without any opportunity to obtain new counsel; and (2) petitioner was denied his right to Due Process at his contempt hearing, because the trial court did not grant his request for a

/ / /

/ / /

1

continuance to prepare for trial.[1] [Doc. No. 1, at p. 2.] Respondent argues that the Petition should be dismissed as moot, because petitioner's sentence is completed and he is no longer incarcerated. [Doc. No. 8-1, at p. 6.] Alternatively, respondent argues that the Court should deny the Petition, because petitioner did not have a right to counsel, and, even if he did have a right to counsel, he waived that right when he insisted on representing himself. [Doc. No. 8-1, at pp. 6-8.]

This Court has reviewed the Petition [Doc. No. 1]; respondent's Answer and supporting Memorandum of Point and Authorities [Doc. No. 8]; the Lodgments submitted by respondent, including the state court record [Doc. No. 9]; and petitioner's Traverse [Doc. No. 10]. For the reasons outlined below, IT IS HEREBY RECOMMENDED that the District Court DENY the Petition in its entirety.

## *Procedural History*

Petitioner was married in 1991, and he and his wife separated in 2008. *In re Marriage of Tarr*, 2012 WL 2899072, at *1 (Cal. Ct. App., July 17, 2012, No. D059223). The Petition in this case arises from a spousal support order in their marital dissolution proceeding. On June 1, 2015, while petitioner was present, the San Diego Superior Court (the "trial court") issued an Order to Show Cause and an Affidavit for Contempt in Case No. ED73327 ordering petitioner to appear on July 29, 2015 to offer any legal reason why he should not be found guilty of contempt for his willful failure to comply with a spousal support order. [Doc. No. 9-1, at p. 4-5.] An attached affidavit and other documentation shows amounts due under a spousal support order as well as the outcomes

---

[1] Petitioner raises these same claims under the Federal Constitution and the "corresponding provisions of the California Constitution." [Doc. No. 1, at p. 4.] To the extent petitioner raises claims under the California Constitution, his claims are not cognizable on Federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States.").

of prior contempt proceedings against petitioner. [Doc. No. 9-1, at p. 6-13.] On July 29, 2015, petitioner's counsel appeared before the court on petitioner's behalf for an arraignment on the charges, and a contempt hearing was set for August 7, 2015. [Doc. No. 9-1, at p. 25.]

On August 6, 2015, petitioner filed a Response to the Application for Contempt. The response was filed "in pro per." [Doc. No. 9-1, at p. 15.] In the Response, petitioner argued he was entitled to a jury trial because each of the counts against him could subject him to jail time. [Doc. No. 9-1, at p. 16.] He also argued that the action for contempt should be denied because he did not willfully violate the spousal support order. Rather, petitioner claimed he did not have the ability to pay, because he was not "gainfully employed." [Doc. No. 9-1, at p. 16-18.]

On August 7, 2015, the parties appeared before the trial court for a contempt hearing, and the record before this Court includes a transcript of this hearing. [Doc. No. 9-1, at p. 20.] During the hearing, petitioner twice stated on the record that he wished to relieve his retained counsel and represent himself, even though the trial court warned him that it was not in his best interest to do so. [Doc. No. 9-1, at pp. 24-28.]

Petitioner also argued he was entitled to a jury trial, but the trial court denied petitioner's request. As the trial court explained, a jury trial is required under California law when the defendant faces 180 or more days in jail, and petitioner's maximum exposure was only 65 days. [Doc. No. 9-1, at pp. 29-30.] Next, petitioner requested a continuance so he could "properly prepare for this." [Doc. No. 9-1, at p. 30.] However, the trial court denied petitioner's request for a continuance. [Doc. No. 9-1, at pp. 30-31.]

Next, the trial court heard testimony from petitioner's former wife. [Doc. No. 9-1, at p. 31.] She testified that petitioner did not meet his court-ordered spousal support obligations for various months in 2012, 2013, and 2015 and indicated she was alleging eight counts of contempt. [Doc. No. 9-1, at p. 32-38.] Petitioner's former wife also presented wage and asset exhibits and testimony to show petitioner was able to make the required spousal support payments. [Doc. No. 9-1, at p. 40-60.] She further testified

about repeated difficulties in collecting spousal support from petitioner since 2008. [Doc. No. 9-1, at pp. 61-62.]

Petitioner was then asked if he wished to present any evidence, and he said, "I don't have any evidence at this time, your Honor." [Doc. No. 9-1, at p. 62.] Based on the evidence presented, counsel for petitioner's former wife argued that the trial court should find petitioner in contempt because he had the ability to meet his spousal support obligations but failed to do so. [Doc. No. 9-1, at pp. 63-68.] The Court asked petitioner, "anything you want to say to the Court?" Petitioner replied, "All I'm saying is that I live at home with my parents. I have a used car, and I'm doing my best to be gainfully employed to pay everything that I can to meet my obligations, and I paid over – more than half of the obligations. . . . I'm sorry your Honor. It's my intention to continue to find more and more gainful employment so I cannot only meet my obligations, to be able to catch up on obligations where I haven't been able to pay everything in full." [Doc. No. 9-1, at p. 68.]

Based on the evidence presented by petitioner's former wife and petitioner's failure to present any evidence of an inability to pay, the trial court concluded there was a "willful failure to pay" and found petitioner in contempt. [Doc. No. 9-1, at pp. 63, 69.] A sentencing hearing was scheduled for August 14, 2015 and petitioner was ordered to return on that day. [Doc. No. 9-1, at pp. 69-70, 74.] At the sentencing hearing, the trial court imposed "65 days of PSP"[2] to be "completed within 150 days" of August 14, 2015 and directed petitioner to report to probation. [Doc. No. 9-1, at pp. 82-83.] A review hearing was set for October 30, 2015. [Doc. No. 9-1, at p. 83.]

On September 29, 2015, the trial court had a hearing to consider petitioner's ex parte request to stay the judgment and sentence while he pursued an appeal of the trial court's contempt order. [Doc. No. 9-1, at p. 93, 104.] During this ex parte hearing,

---

[2] "PSP" refers to community service or working on public works projects. [Doc. No. 9-1, at p. 85.]

4

petitioner indicated that he wanted to stay the sentence of 65 hours of community service, because he did not have time to work, look for employment, and complete the community service hours on the schedule imposed by the trial court. [Doc. No. 9-1, at pp. 95-96.] He said he only has as much work as he can find. "Hopefully 30 hours a week" with additional time to find that work. [Doc. No. 9-1, at p. 96.] He does internet marketing for various clients and needs time to find that work. [Doc. No. 9-1, at pp. 96-97.]

The trial court explained that people who are sentenced to do community service and have a job usually do their community service hours on the weekend. So that petitioner would not lose his job, the trial court offered to modify the order to allow petitioner more time to complete the community service hours. [Doc. No. 9-1, at pp. 97-98.] However, petitioner argued that would still not give him enough time to find work. [Doc. No. 9-1, at p. 98.]

The trial court also said, "You never gave me any evidence of your appointment schedule, so how am I supposed to take it into consideration if you never give me that information? . . . I don't have to ask for it. You're supposed to provide it to me. In other words, if you want me to consider something, you have to give it to me. I don't have an obligation to ask you. I was given no evidence of your employment schedule for me to consider. . . . That's your burden." [Doc. No. 9-1, at p. 93-96.] Although the trial court indicated it would consider allowing petitioner extra time to complete his community service, petitioner was forewarned that by the time of the review hearing on October 30, 2015 he needed to show an average of two days of community service per week. [Doc. No. 9-1, at p. 104-105.] The trial court denied petitioner's request for a stay. [Doc. No. 9-1, at pp. 104-105.] Thereafter, on October 6, 2015, the record indicates that petitioner filed a Notice of Appeal in the California Court of Appeal seeking to overturn the trial court's contempt order. [Doc. No. 9-2, at p. 1.]

On October 29, 2015, petitioner served a status report stating he completed two days of community service on August 18 and 20, 2015. [Doc. 9-1, at p. 90.] Petitioner explained in his status report that he was unable to serve 60 days of community service

"on such an expedited schedule," because that would mean he would be unable to work enough hours to pay his ongoing spousal support obligations. [Doc. No. 9-1, at p. 86.]

On October 30, 2015, the trial court held a status hearing. The minutes of the hearing state as follows: "[Petitioner] is admonished that if proof of completion is not provided to the court on or before 1-15-2016, the court intends to remand him for failure to complete PSP for every missed day of PSP." [Doc. No. 9-6, at p. 3.]

On November 13, 2015, the California Court of Appeal dismissed petitioner's appeal of the trial court's contempt ruling. The California Court of Appeal reasoned that a judgment of contempt "is not directly appealable." [Doc. No. 9-2, at p. 2.]

On or about December 2, 2015, petitioner filed a habeas corpus petition with the California Court of Appeal claiming he was denied his constitutional right to counsel and a continuance. [Doc. No. 9-7, at pp. 1-10.] On December 4, 2015, the California Court of Appeal denied the habeas corpus petition, stating that the trial transcript showed petitioner was not denied the right to counsel, because he "discharged appointed counsel and chose to represent himself, as was his right under *Faretta v. California* (1974) 422 U.S. 806." [Doc. No. 9-3, at pp. 1-2.] With respect to the continuance, the California Court of Appeal's denial also states as follows: "Having granted [petitioner's] request to represent himself on the day scheduled for trial, the superior court properly required him to proceed that day, because [petitioner] made no showing of reasonable need for a continuance." [Doc. No. 9-2, at pp. 1-2.]

On December 28, 2015, petitioner filed a habeas corpus petition in the California Supreme Court. [Doc. No. 9-4, at p. 1-150; Doc. No. 9-5, at p. 1.] Once again, petitioner claimed he was denied his constitutional right to counsel and a continuance. [Doc. No. 9-4, at p. 3.] The California Supreme Court summarily denied the petition on January 13, 2016. [Doc. No. 9-5, at p. 1.]

On January 15, 2016, the trial court held a status hearing and found that petitioner had not completed his community service requirements. As a result, the trial court committed petitioner to 65 days of custody with the Sheriff. [Doc. No. 9-6, at p. 2.]

Almost one year later, on January 14, 2016, petitioner filed his Petition in this Court raising the same claims he presented to the California Court of Appeal and the California Supreme Court. [Doc. No. 1.]

## *Discussion*

### I. *Actual Controversy Requirement.*

Respondent argues that petitioner's claims should be dismissed as moot, because his sentence is completed and he is no longer in custody. [Doc. No. 8-1, at p. 6.] "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). However, a case is not moot under this rule if "it falls within a special category of disputes that are 'capable of repetition' while 'evading review.'" *Turner v. Rogers*, 564 U.S. 431, 439 (2011). Petitioner's case falls within this category, because his sentence was too short to be fully litigated in the state court system and then arrive here before the sentence was complete. *Id.* at 440. In addition, the case is capable of repetition, because the problems of petitioner's ability to pay under the support order have been ongoing since 2008 and there have already been several contempt proceedings. Thus, there is a reasonable likelihood that the same issues could arise again. Accordingly, it is RECOMMENDED that the District Court consider petitioner's claims on the merits and not dismiss them as moot because petitioner has already completed his sentence.

### II. *Standard of Review.*

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "[A] mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (internal quotations omitted).

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citations and quotations omitted). Under AEDPA, a habeas petition "on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2). For purposes of Section 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Therefore, a lack of controlling Supreme Court precedent can preclude habeas corpus relief. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

The AEDPA standard is highly deferential and "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Federal habeas relief may be granted under the "contrary to" clause of Section 2254 if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The focus of inquiry under the "contrary to" clause is "whether the state court's application of clearly established federal law is objectively unreasonable." *Id.* "[A]n unreasonable application is different from an incorrect one." *Id.* In other words, federal habeas relief cannot be granted simply because a reviewing court concludes based on its own independent judgment that the state court decision is erroneous or incorrect. *Id.* Habeas relief is only available under Section 2254(d)(1) "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. at 102. In addition, "review

under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Where there is no reasoned decision from the state's highest court, Federal Courts "look through" to the "last reasoned state-court opinion" and presume it provides the basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-806 (1991). If the state court does not provide a reason for its decision, the Federal Court must conduct an independent review of the record to determine whether the state court's decision is objectively unreasonable. *Crittenden v. Ayers*, 624 F.3d 943, 947 (9th Cir. 2010). To be objectively reasonable, a state court's decision need not specifically cite Supreme Court precedent. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court's decision will not be "contrary to clearly established Federal law." *Early v. Packer*, 537 U.S. 3, 8 (2002).

As mentioned above, the California Court of Appeal reasoned that petitioner's right to counsel was not violated in this case, because the record showed he discharged appointed counsel and elected to represent himself. The California Court of Appeal also reasoned that the trial court properly required petitioner to proceed with the contempt hearing on that day, because he did not make a showing of reasonable need for a continuance. [Doc. No. 9-3, at pp. 1-2.] Thereafter, the habeas petition presented to the California Supreme Court on the same issues was summarily denied. [Doc. No. 9-5, at p. 1.] Accordingly, this Court must "look through" to the decision of the California Court of Appeal to determine whether it satisfies the AEDPA standard. *Ylst v. Nunnemaker*, 501 U.S. at 805-806.

### III. *Due Process and the Right to Counsel in Civil Contempt Cases.*

Petitioner alleges he was denied his Due Process right to counsel, because his "court appointed counsel was dismissed and the trial judge denied petitioner any opportunity to obtain another counsel, whether that counsel be retained or appointed."

9

[Doc. No. 1, at p. 5, 7.][3] Respondent argues that petitioner does not have a Sixth Amendment right to counsel under the circumstances of the case, and petitioner's right to Due Process was protected because California routinely provides counsel for family law contempt proceedings, as it did in this case. However, respondent contends petitioner clearly waived his right to counsel and exercised his right to self-representation, so there was no violation of Due Process. [Doc. No. 8-1, at pp. 7-8.] Respondent also points out that petitioner's version of the facts is "refuted by the record." [Doc. No. 8-1, at p. 8.] Petitioner did not tell the trial judge he wanted a continuance to retain new counsel. Rather, he clearly stated he wanted to represent himself. [Doc. No. 9-1, at pp. 24-28.]

Clearly established Supreme Court law on the right to counsel in a civil contempt proceeding that could lead to incarceration is found in the Supreme Court's decision in *Turner v. Rogers*, 564 U.S. 431 (2011). In *Turner v. Rogers*, the Supreme Court reiterated that the Sixth Amendment right to counsel applies only to criminal proceedings and does not apply in civil contempt proceedings that may lead to incarceration intended to coerce an able defendant to do what the court previously ordered. *Id.* at 441-442. "[W]here civil contempt is at issue, the Fourteenth Amendment's Due Process Clause allows a State to provide fewer procedural protections than in a criminal case." *Id.* at 442.

More importantly for purposes of this case, the Supreme Court in *Turner v. Rogers*, 564 U.S. 431, held that "the Due Process Clause does not automatically require

---

[3] Petitioner also alleges that his counsel "was dismissed because he appeared for the trial and was wholly unprepared and unfamiliar with the facts of the case" and "failed to raise the affirmative defense of the petitioner's inability to pay the subject support because petitioner, at the time, was unemployed." [Doc. No. 1, at p. 5, 7.] However, these extraneous arguments have not been addressed herein because they are not properly before the Court. The adequacy of counsel's representation before petitioner decided to relieve him as counsel was not placed at issue in the state court record, so these allegations are not exhausted as required by 28 U.S.C. 2254(b)(1)(A). Nor does it appear petitioner intended to raise these allegations as a separate, new, unexhausted claim.

the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a ... support order, even if that individual faces incarceration (for up to a year)." *Id.* at 448. More specifically, it is not necessary for the State to appoint counsel in a civil contempt proceeding if the opposing party is not represented by counsel and "the State provides alternative procedural safeguards ... ([*i.e.,*] adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings)." *Id.*

When there is a right to counsel in a criminal case, it is clearly established Supreme Court law that the right may be waived, as long as the waiver is "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004). A waiver of counsel is intelligent "when the defendant 'knows what he is doing and his choice is made with eyes open.'" *Id.* at 88, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942). The defendant "must be warned specifically of the hazards ahead." *Id.* at 88-89, citing *Faretta v. California*, 422 U.S. 806 (1975). On the other hand, the Supreme Court in *Iowa v. Tovar* concluded that no specific admonitions by the trial court are required for a waiver to be valid. In other words, the Supreme Court declined to "prescribe[] any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar,* 541 U.S. at 88. Rather, the Supreme Court in *Iowa v. Tovar* stated that the information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* at 88, 92-94. "[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Id.* at 92.

To the extent petitioner had a right to counsel under the Due Process Clause of the Fourteenth Amendment, it is beyond doubt that the trial court did not violate any such right. As admitted in the Petition, petitioner had "appointed counsel" to represent him in challenging the contempt charges filed against him. [Doc. No. 1, at p. 5.] The record

11

also establishes that petitioner knowingly, intelligently, and unequivocally waived his right to appointed counsel and elected to proceed on his own. [Doc. No. 9-1, at pp. 24-28.]

On August 6, 2015, the day before the contempt hearing, petitioner submitted a written Response "in pro per." [Doc. No. 9-1, at p. 15.] Then, at the outset of the contempt hearing on August 7, 2015, petitioner's counsel presented the court with a signed substitution of attorney form and asked to be relieved as counsel. Next, the court asked petitioner to explain why he wanted to represent himself, and he replied, "The main reason, your Honor, I want to represent myself is because of the direction that I want to go in. . . . I feel I can handle this and go in the direction that I feel is best." [Doc. 9-1, at p. 24.] The trial court strongly admonished petitioner that it was not a good idea to represent himself, that he was underestimating the knowledge and skill needed to practice law, that he was doing so at his own peril, and that if he chose to do so he would be held to the same standard as if he were represented by counsel. [Doc. No. 9-1, at pp. 25-26.] Petitioner then withdrew the substitution of attorney. [Doc. No. 9-1, at p. 26-27.] The trial court called a recess and told the parties to return at 10:00 a.m. [Doc. No. 9-1, at p. 28.]

Next, there was an "off-the-record chambers conference" about the status of the case. [Doc. No. 9-1, at p. 28.] Back on the record, petitioner renewed his request to represent himself despite the trial court's recent and strongly worded admonishment that it was against his own interest to do so. [Doc. No. 9-1, at p. 28.] The trial court confirmed, asking petitioner "that's what you want to do?" and he responded, "Yes, your Honor." [Doc. No. 9-1, at p. 28.] The trial court granted petitioner's request to represent himself and once again advised petitioner that he would be held to the same standard as an attorney. [Doc. No. 9-1, at pp. 28-29.]

Based on the foregoing, there is more than enough evidence in the record to show that the trial court did not violate any Due Process right petitioner may have had to appointed counsel to represent him in connection with the contempt hearing. The trial

court appointed counsel to represent petitioner, but petitioner clearly stated he wanted to relieve counsel and represent himself. Given the clear record in this case, there was no violation of Due Process, and the California Court of Appeal's decision to deny petitioner's right to counsel claim under the Due Process Clause of the Fourteenth Amendment is not objectively unreasonable. Nor is it contrary to clearly established Supreme Court law. Accordingly, IT IS RECOMMENDED that the District Court deny petitioner's claim that the trial court violated his constitutional right to counsel.

### IV. *Petitioner's Request for a Continuance/Due Process.*

Petitioner contends that his right to Due Process was violated because the trial court did not grant him a continuance to prepare for his contempt hearing. [Doc. No. 1, at p. 7.] According to petitioner, the trial court "insisted on immediately going to trial" without giving him time to prepare or to obtain alternate counsel. [Doc. No. 1, at p. 7.] Respondent argues that no constitutional right was violated, because the trial court reasonably denied petitioner's request for a continuance, and petitioner has not shown that a continuance would have affected the outcome.

In *Ungar v. Sarafite*, 376 U.S. 575 (1964), a criminal case, the United States Supreme Court stated that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates Due Process even if the party fails to offer evidence or is compelled to defend without counsel. [Citation omitted.] Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. [Citation omitted.] There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate Due Process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. [Citation omitted.]" *Id.* at 589-590.

In *Morris v. Slappy*, 461 U.S. 1 (1983), for example, the Supreme Court upheld the denial of a defendant's request for a continuance during the first three days of trial so he

13

could be represented by different appointed counsel, because the requests were "[b]elated" and it appeared they "were not made in good faith but were a transparent ploy for delay." *Id.* at 13. The Supreme Court reasoned that trial courts must have "broad discretion" and "a great deal of latitude in scheduling trials" even if the defendant is seeking a change of counsel. *Id.* at 11. Since trial courts have the burden of "assembling the witnesses, lawyers, and jurors at the same place at the same time," they are entitled to deny requests for continuances "except for compelling reasons." *Id.* at 11.

Based on the record, petitioner's contention in his Petition that the trial court "insisted on immediately going to trial" is overstated in that it is intended to suggest petitioner did not have sufficient notice or time to prepare and was surprised on August 7, 2015, when the trial court denied his request for a continuance and held the contempt hearing on the scheduled date. The Order to Show Cause was issued against petitioner on June 1, 2015 while he was present in the courtroom. [Doc. No. 9-1, at p. 4.] By the time of the next hearing on July 29, 2015, petitioner was aware through counsel that a hearing date for a contempt hearing had been set for August 7, 2015. [Doc. No. 9-1, at p. 25.] In addition, on August 6, 2015, the day before the contempt hearing, petitioner filed a Response "in pro per." [Doc. No. 9-1, at p. 15.] The first page of the Response shows the hearing date of August 7, 2015. [Doc. No. 9-1, at p. 15.] The substance of the Response indicates petitioner clearly understood the main issue before the trial court was his ability to pay. Although he argued in the Response that he did not have the ability to pay because he was not "gainfully employed," petitioner did not submit any supporting evidence. [Doc. No. 9-1, at p. 16.] In addition, the record indicates there were at least three prior contempt proceedings against petitioner since 2011, so this was not his first experience with this type of proceeding. [Doc. No. 9-1, at p. 7.]

Petitioner's contention in his Petition that the trial court denied him a continuance and "any opportunity to obtain another counsel" by insisting on "immediately going to trial" is also overstated. [Doc. No. 1, at p. 5.] There is nothing in the record to indicate petitioner sought a continuance on the day of his contempt hearing in order to obtain new

counsel. Rather, as outlined above, the record clearly shows petitioner wanted to represent himself, stating "I feel I can handle this and go in the direction that I feel is best." [Doc. 9-1, at p. 24-28.]

The record shows petitioner requested a continuance so he could "properly prepare for this." [Doc. No. 9-1, at p. 30.] The following colloquy then took place on the record:

> THE COURT: You've had an opportunity to prepare, right? This is – You've had the entire time from the last time until now. When did you decide to represent yourself?
>
> [PETITIONER]: This week.
>
> THE COURT: Well, I told you I wasn't going to cut you any slack. We're here for trial. Okay. So I'm not going to give you any – anything – I'm not going to treat this case any differently than if [counsel] was representing you, so you knew that coming in today.
>
> [PETITIONER]: Okay.
>
> THE COURT: Okay. So what's going to change in terms of the evidence? What do you need? Do you need witnesses to subpoena?
>
> [PETITIONER]: Possibly.
>
> THE COURT: Who?
>
> [PETITIONER]: I don't know. I haven't had proper time to prepare for this.
>
> THE COURT: No, I'm going to deny the request for a continuance.

[Doc. No. 9-1, at pp. 30-31.]

Once again, the record in this case is clear. The Order to Show Cause was issued June 1, 2015, and the contempt hearing was set for two months later on August 7, 2015. As petitioner was aware, the contempt hearing was set to determine a single, straightforward issue – whether petitioner had the ability to pay. Despite an opportunity to do so, petitioner did not present the trial court with any viable reason why he needed

15

additional time to prepare for the contempt hearing. As a result, there was no violation of Due Process when the trial court denied his request for a continuance. Accordingly, the California Court of Appeal's decision to deny petitioner's Due Process claim is not objectively unreasonable. Nor is it contrary to clearly established Supreme Court law. Therefore, IT IS RECOMMENDED that the District Court deny petitioner's claim that the trial court violated his right to Due Process when it denied his request for a continuance.

## *Conclusion and Recommendation*

This Report and Recommendation is submitted to the assigned United States District Judge pursuant to Title 28, United States Code, Section 636(b), and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California. Based on the parties' moving and opposing papers and exhibits, IT IS HEREBY RECOMMENDED that the District Court issue an order: (1) DENYING respondent's request to dismiss the Petition as moot; (2) approving and adopting this Report and Recommendation; and (3) directing that judgment be entered DENYING the Petition.

IT IS HEREBY ORDERED that *no later than May 12, 2017* any party to this action may file and serve written objections to this Report and Recommendation. The document should be captioned "Objection to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objection shall be filed and served *no later than May 26, 2017*. The parties are advised that failure to file an objection within the specified time may waive the right to raise those objections on appear of this Court order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: April 11, 2017

Hon. Karen S. Crawford
United States Magistrate Judge